## North Chicago St. R. R. Co. v. Lizzie Schwartz.

1. PLEADING—*In Personal Injury Cases.*—Where an injury resulted from a sudden jerk of a car caused by an obstruction on the track which was under the defendant's control, an allegation that the obstruction was "in and upon defendant's tracks" is a sufficient allegation that the obstruction was under defendant's control.

2. NEGLIGENCE—*Prima Facie Case Shifting the Burden of Proof.*—Where an injury results from a jerk caused by a car striking an obstruction on the tracks, and the evidence shows that the obstruction was under the control of defendant, and the car in passing over it lurched or jerked so severely that the plaintiff was thrown from her seat, a *prima facie* case of negligence is shown, and the burden is cast upon the defendant to rebut the specific negligence charged.

**Action in Case,** for personal injuries. Trial in the Superior Court of Cook County; the Hon. JONAS HUTCHINSON, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the October term, 1898. Affirmed. Opinion filed May 22, 1899.

**Statement of the Case.**—Appellee was injured while a passenger on one of appellant's cable cars December 5, 1895, by being thrown from her seat because of the alleged negligent operation of appellant's train, consisting of a grip and one trailer, a closed car.

Her suit to recover for the injuries, having been tried before the court and a jury, resulted in a verdict of $3,500 and judgment thereon, from which this appeal is taken.

The declaration has two counts, the first alleging negligence of appellant in operating, propelling and driving its

car against an obstruction in and upon its tracks, whereby appellee was thrown with great force and violence out of her seat and upon the floor of the car, etc.; the second alleging negligence in that the car was driven and propelled against a certain piece of iron or horseshoe which was fastened in the cable slot, gutter, or opening through which the grips connected the cars with the propelling cable, which moved with great speed and force, whereby appellee was thrown from her seat and injured, etc.

The evidence shows that appellant's train was going along Lincoln avenue, Chicago, and when it reached a point a short distance south of Fullerton avenue it stopped; that in front of the grip-car there was some obstacle or obstruction in the cable slot which the gripman tried to remove, but did not succeed; that a workman came with a box of tools from toward the city, and tried to remove the obstacle, but could not do it; that then, after a lapse of ten or fifteen minutes, some one shouted to the passengers in the train to sit down (appellee had remained seated all the time, however), whereupon the train began to move, and immediately thereafter there was a severe jerk or lurch of the car in which appellee was seated, by means of which she was thrown from her seat to the floor of the car. What the obstruction was does not clearly appear from the evidence.

As a result of the fall appellee, who was then about twenty-seven years of age, a married woman, suffered a permanent injury to her knee joint, from which she had great pain for several weeks; her limb was incased in a plaster cast four or five weeks; she was compelled to use crutches from six to nine days and a cane four or five weeks, and at the time of the trial she testified: "I am never without any pain; I can not say that it is one day that I haven't pain in the knee, and when I am weary it is always weak. I can never go anywhere any distance alone except to go to the store, to the meat market and my mother's. I never go anywhere else alone. I have my husband with me or one of my sisters. I have always some-

body with me for fear I would drop and not have any assistance. Prior to this accident I did the housework at my house. Since the injury I do the light housework, but I don't do all of it," and also that her knee was affected by changes in the weather. She is corroborated by several witnesses as to the weak condition of her knee and her difficulty in going about. Dr. Ochsner, a surgeon of twelve years experience, who examined her October 10, 1897, while asleep under the influence of chloroform, testified that the knee was then in an inflamed condition; that there was a sub-acute inflammation of the knee—a thickening of the ligaments and a roughening of the surface of the knee joint, and also a roughening of the lower surface of the knee cap; that it was impossible to straighten the joint perfectly without force; that the injury, in his opinion, was permanent; that it was likely to lessen until after a few years, and as she grew older after that time, it was likely to increase.

Dr. Weatherly, a physician who attended appellee from December 7, 1895, for several months, and gave attention to her up to the time of trial, having seen the knee during that period twenty-five or thirty times, testified that when Dr. Ochsner examined appellee her knee was stiff; also that "the whole joint is injured, the bones, the ligaments and the synovial membrane that covers the articular surface; that is my opinion; it is what we call an arthristis chronic inflammation of the joint, or sub-acute." * * * " A good part of the strength is gone. She can't use the knee, and in my opinion never will be able to use it as she uses the other knee, or as she used this knee previous to the accident. I think it is a permanent injury. She can't completely straighten it, neither can she completely bend it up. It is a stiff leg. She can't work around with it. She can't perform the functions of a housewife altogether, and it would render her unable to walk securely. She is liable to get a catch when she is walking—stiffen up on her —get caught when it is half-way flexed—become unable to walk. In my opinion it is permanent. If she has to work on her knee probably her knee will become worse so she can't

use it. It is all speculation to say exactly what will be the result."

There was also evidence that appellee, before and after the injury to her knee, had a polypus in the womb caused by chronic inflamation, which, in the opinion of Dr. St. John, who testified for appellant, might have affected her knee joint; that appellee was seen at different times by several witnesses to walk without any apparent difficulty, there being nothing unusual in respect to her walking; that she danced both round and square dances; and Dr. Germer, who attended her first after her injury, testified there was no external evidence of injury to the skin, and that on January 5, 1896, a month after the accident, the knee was nearly recovered from the injury.

The only instruction given for appellee is, viz.:

"1.  The court instructs the jury that the defendant, The North Chicago Street Railroad Company, is required to use all reasonable means, care, vigilance and foresight, in view of the character and modes of conveyance adopted by it, to prevent injury to passengers, and while said company is not an insurer of absolutely safe carriage of its passengers, yet it is held to the exercise of the highest degree of care, skill and diligence practically consistent with the operation of its road."

The jury was quite fully instructed at request of appellant, and no complaint is made in that regard.

EGBERT JAMIESON and JOHN A. ROSE, attorneys for appellant.

CUNNINGHAM, VOGEL & CUNNINGHAM, attorneys for appellee.

Proof that the plaintiff was a passenger, that the accident happened, and that the injury was inflicted, imposed upon the carrier the duty to explain the accident, and to prove that it resulted from a cause for which the carrier should not be held responsible.  P., C. & St. L. Ry. Co. v. Thompson, 56 Ill. 141; Eagle Packet Co. v. Defries, 94 Ill. 598; N. C. S. Ry. Co. v. Cotton, 140 Ill. 486; Chicago City Ry. Co. v. Engel, 35 Ill. App. 490; Gleeson v. Virginia Midland

Railroad Co., 140 U. S. 435; G. & C. U. R. R. Co. v. Yarwood, 15 Ill. 468.

In many cases it has been held that in a suit by a passenger against a carrier for an injury, the mere proof of the accident by which the injury was occasioned is sufficient to throw the burden on the carrier to show that he exercised due care, and there seems to be a general concurrence of authority that where there was an absence of *vis major*—and it is shown that the injury happened from the abuse of the agencies within the defendant's power—it will be inferred from the mere fact of the injury that the defendant acted negligently.   N. C. S. Ry. Co. v. Cotton, 140 Ill. 494.

Where a car was overturned on the defendant's road, in which plaintiff was a passenger, without fault on his part, he thereby makes out against the company a *prima facie* case of negligence and places upon it the burden of rebutting that presumption by proving that the accident resulted from a cause for which it could not be held responsible.   P., C. & St. L. Ry. Co. v. Thompson, 56 Ill. 138.

The happening of an accident to a passenger during the course of his transportation raises a presumption that the carrier has been negligent; the burden of rebutting this presumption rests upon the carrier.   Undoubtedly the law requires the plaintiff to show that the defendant has been negligent, but where the plaintiff is a passenger a *prima facie* case of negligence is made out by showing the happening of the accident.   If the injury to a passenger is caused by apparatus wholly under the control of the carrier, and furnished and applied by it, a presumption of negligence on its part will be raised.   N. Y. C. & St. L. R. R. Co. v. Blumenthal, 160 Ill. 48.

Mr. Presiding Justice Windes, after making the above statement, delivered the opinion of the court.

Appellant contends, first, the verdict is not warranted by the evidence; second, that the verdict is excessive; third, that the court erred in giving appellee's instruction; and, fourth, also in the admission of evidence.

First. It is claimed that under the first count, there being no allegation that the obstruction against which the car ran was under the control of appellant, the burden of proof could not shift to appellant, and it was not sufficient to make a *prima facie* case, and thus shift the burden to appellant, for appellee to show that she was a passenger, and was injured while riding in the car, without showing affirmatively that the jerk or lurch of the car which threw appellee from her seat was caused by the striking of the car against an obstruction on the tracks. If it be conceded that this contention is correct, still we are of opinion, from the evidence above stated, the jury were justified in finding that the lurch or jerk of the car was caused by an obstruction on appellant's tracks which was under its control. The allegation that the obstruction was " in and upon defendant's tracks " was, however, a sufficient allegation that the obstruction was under appellant's control, and the evidence clearly shows that appellant did control the obstruction.

If it be conceded that the evidence fails to show that the jerk was caused by the car striking the obstruction, still the evidence showing that the obstruction was under the control of appellant on its tracks, and the car in passing over it lurched or jerked so severely that appellee was thrown from her seat, there was a *prima facie* case of negligence shown, and the burden was thus cast upon appellant to rebut the specific negligence charged. Cramblett v. R. R. Co., 82 Ill. App. 542, and cases there cited.

The second count may be disregarded because the proof fails to show what the obstruction in the cable slot was.

Second. The verdict is large, but we can not say, from a careful examination of the evidence, but that the jury were warranted in awarding the amount they did. If the jury believed appellee and her witnesses, and we are not prepared to say their evidence was not entirely credible, the verdict is not excessive.

The evidence that appellee danced after her injury is explained by her and her physician. The physician testified

that he advised her to use her knee—take daily walks and even to dance, in the hope that moderate exercise would prevent her knee from becoming permanently stiff.   Appellee acted on his advice and danced on two occasions.

Third.   We see no tenable objection to appellee's instruction.   The claim of appellant that it does not apply to the case made by the declaration, can not be sustained.   It could not, in our opinion, have misled the jury, because it is general in its scope.   It could not reasonably have been referred to any liability of appellant not alleged nor proven.   In the admission of the evidence complained of, we see no reversible error, and it seems unnecessary to refer to it specifically.

The judgment is affirmed.